836 F.2d 412
 Franklyn H. CRAFT, Herma Marsden, Harold Ramse, Kenneth
Harrod, Mary Kuppinger Jordan, Roger Ward and Gene
Neuswanger, on behalf of themselves and all other cabin
owners within Custer State Park, Custer County, South
Dakota, similarly situated, and the South Dakota Cabin
Owners Association, an unincorporated association, Appellees,
v.
Owen WIPF, Robert Ingle, Walter Black, John Cimpl, Harvey
Thayer, Robert Reder, David Brost, Neil Bien, Jeremiah
Murphy, Richard Meyer and Marlon Thielsen, individually, and
in their capacity as present or former members of the South
Dakota Game, Fish and Parks Commission, and their successors
in office; Jack Merwin, individually, and in capacity as
former Secretary, South Dakota Department of Game, Fish and
Parks; Jeff Stingley, individually, and in capacity as
Secretary, South Dakota Department of Game, Fish and Parks
and Warren Jackson, individually, and in his capacity as
Division Director, Division of Custer State Park, South
Dakota Department of Game, Fish and Parks and his successors
in office, Appellants.
 No. 87-5117.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1987.
Decided Dec. 30, 1987.
 
 Mark A. Moreno, Asst. Atty. Gen., Pierre, S.D., for appellants.
 Stephen L. Wilson, Roseville, Minn., for appellees.
 Before McMILLIAN, ROSENN* and JOHN R. GIBSON, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Owen Wipf and fourteen other named South Dakota state officials appeal from an order entered in the District Court for the District of South Dakota denying their motion for summary judgment in a 42 U.S.C. Sec. 1983 civil rights action. Franklyn Craft and other owners of cabins in Custer State Park allege in this action that certain state officials, who are or were members or executives of the South Dakota Game, Fish and Parks Commission (Commission) or the South Dakota Department of Game, Fish, and Parks (Department) had violated their due process and equal protection rights by refusing to renew their cabin permits and by increasing their rents because they asserted their constitutional rights. For reversal, the state officials argue that the district court erred in failing to grant summary judgment on the basis of qualified immunity. For the reasons discussed below, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.
 
 
 2
 This action was initiated by 48 owners of private cabins located in Custer State Park after state officials refused to renew site permits for their cabins. Beginning in the 1920s-1930s, South Dakota encouraged private citizens to build cabins on certain tracts of land in Custer State Park. The cabin owners allege that state officials promised the original cabin owners that their permits would be issued for a term of 99 years. Prior to 1949, cabin owners were issued renewable permits for an unspecified term of years. Beginning in 1949, a few permits were issued for a term of 10 years, but most permits issued still had no specific expiration date. From 1959 to 1982, all permits were issued or renewed for a term of 5 years.
 
 
 3
 In 1966, the South Dakota legislature repealed its statute which encouraged private cabin sites in Custer State Park and gave the Commission authority and control over cabin permits on state park land. In December 1967, in accordance with the discretionary authority granted by the legislature, the Commission met and adopted a policy ending all private cabin leasing in Custer State Park effective at the end of December 1982. The cabin owners were not notified of the December 1967 meeting and did not attend. Some cabin owners were informed of the termination decision immediately after the 1967 meeting, but most cabin owners were not notified of the decision until the mid-to-late 1970s.
 
 
 4
 In 1978, state officials issued cabin owners final permits, which were to expire on December 31, 1982. These permits contained a provision notifying the permit holder that the permit would not be renewed upon expiration. Some cabin owners attempted to protest this provision: one cabin owner attached a letter of protest to his signed permit; a second cabin owner crossed out the "no renewal" provision before signing the permit. State officials told these two cabin owners that unless they signed the permit as written, they would not be issued a permit for 1978-1982. Both owners then signed nonrenewable permits.
 
 
 5
 In 1978, the cabin owners organized an association to challenge the termination policy, and in 1980 they filed an action in state court challenging the Commission's decision. The lawsuit was dismissed by stipulation of the parties in April 1981. The parties agreed that the 1967 termination decision would be considered a "statement of policy" and not a final decision and that the Commission would not be bound by the 1967 decision.
 
 
 6
 On June 4-5, 1982, the Commission held a meeting to consider the issue of cabin permits. The cabin owners received notices of the hearing and many attended. Before the meeting, the cabin owners had sent the Commission an environmental impact statement which concluded that private cabins had only a negligible effect on the park's environment. At the meeting, cabin owners and other members of the surrounding community testified against termination of the permits. Other persons wrote to the Commission expressing their opposition to the proposed termination of the cabin permits. At the end of the second day of hearings, the Commission unanimously voted to terminate all private site permits at the end of 1982.
 
 
 7
 The cabin owners administratively appealed the decision and also filed declaratory judgment actions in state court. The state court enjoined removal of the cabins pending a decision in the declaratory judgment actions. On January 10, 1984, the state court entered judgment for the cabin owners and the state officials appealed.
 
 
 8
 In 1985 the South Dakota Supreme Court reversed the judgment which the state court had entered in favor of the cabin owners. Moulton v. State, 363 N.W.2d 405 (S.D.1985) (Moulton I ). The Supreme Court held that (1) the Commission acted within its statutory authority when it terminated the permits, (2) the 99-year lease given to the original cabin owners had been superseded by the subsequent permits for specific terms and the 1978-1982 nonrenewable permits, and (3) the cabin owners had not signed the specific term permits or the 1978-1982 nonrenewable permit under duress. Id. at 408-09. The South Dakota Supreme Court declined to reach the cabin owners' federal constitutional claims. Id. at 409.
 
 
 9
 While the lawsuits were pending in the state trial court, the cabin owners' permits expired. In December 1983, the Commission assessed the cabin owners the usual annual rent for the 1983 year. While the South Dakota Supreme Court was considering the appeal, the Commission met and decided to issue nonrenewable permits to the cabin owners for 1984. The Commission assessed an annual rent of $375.00 to $500.00. The annual rent assessed for the period from 1978 through 1983 was $35.00. The cabin owners were not notified of the meeting held to discuss the rent increase and did not attend. The Commission told the cabin owners that the rent increase was based on a professional appraisal. The cabin owners challenge the accuracy of the data on which the appraisal was based. They also assert that the increased rent is significantly higher than the rent on private cabin sites in other state parks in South Dakota.
 
 
 10
 Subsequent to the South Dakota Supreme Court decision in Moulton I, the cabin owners brought a Sec. 1983 action in federal district court challenging the state officials' refusal to renew the permits on substantive and procedural due process and equal protection grounds. The state officials moved for summary judgment on two grounds: (1) the cabin owners had failed to show that they had a constitutionally protected property interest in the permits and (2) the state officials were entitled to qualified immunity. The district court denied summary judgment, Craft v. Wipf, No. CIV 85-5092, slip op. at 18 (D.S.D. Sept. 5, 1986), and the state officials appealed.
 
 
 11
 The cabin owners moved to dismiss the appeal for lack of jurisdiction. This court held, however, that it had jurisdiction over the appeal and remanded the case to the district court for a specific ruling on qualified immunity. Craft v. Wipf, 810 F.2d 170, 171 (8th Cir.1987). On remand, the district court again denied the motion for summary judgment, ruling that the state officials were not entitled to qualified immunity. Craft v. Wipf, No. CIV 85-5092 (D.S.D. Feb. 9, 1987) (order). The state officials now appeal.
 
 
 12
 The sole issue before this court is whether the district court erred in holding that the state officials did not have qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity from suit as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Tubbesing v. Arnold, 742 F.2d 401, 405 (8th Cir.1984), citing Davis v. Scherer, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984) (Davis ). The standard to be used in determining the availability of qualified immunity is solely an objective one. "Whether an official may prevail in his [or her] qualified immunity defense depends upon the 'objective reasonableness of [his or her] conduct as measured by reference to clearly established law.' " Id. "No other 'circumstances' are relevant to the issue of qualified immunity." Id.
 
 
 13
 If a law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he [or she] fairly be said to "know" that the law forbade conduct not previously identified as unlawful.... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his [or her] conduct.
 
 
 14
 Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 15
 First, we consider whether the due process right asserted by the cabin owners was clearly established in 1982. In order to establish a due process violation, the plaintiff must initially show that the challenged governmental action deprives him or her of life, liberty or property.[1]
 
 
 16
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it. He [or she] must, instead, have a legitimate claim of entitlement to it....
 
 
 17
 Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
 
 
 18
 Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
 
 
 19
 The cabin owners argue that they have a property interest in their cabin permits. The question before us, however, is not whether the cabin owners have such a right, but rather whether this property interest was clearly established in 1982. By 1982, it was clearly established that the government must accord procedural due process before depriving a person of a protected property interest. However, it was not clearly established in 1982 that South Dakota cabin permits were constitutionally protected property interests. Even at the present time, this question is undecided.
 
 
 20
 The South Dakota Supreme Court in Moulton II, 412 N.W.2d 487 (1987), suggests in one passage that there is a constitionally protected property interest in a cabin permit: "We are convinced, in the present case, especially when viewed against the backdrop of unsettled facts, that the Commission was required by law, via due process constitutional mandate, to grant Plaintiffs a hearing before termination of cabin site permits." At 494 (emphasis added). Because the due process requirement of a hearing applies only if a property interest exists, the above-quoted passage can be read as an implicit holding by the South Dakota Supreme Court that the cabin permit represents a constitutionally protected property interest. At another point in the same opinion, however, the court, declines to address the due process and equal protection claims, viewing them as "not judicially ripe."
 
 
 21
 [B]ecause the termination of cabin site permits was never previously considered by this court from a constitutional posture, we observe that there is a difference between an initial grant and a permit and the termination of a permit once granted. Due process requirements accompanying each situation vary and may be further affected by the factual findings entered at the circuit court level. As these claims are not judicially ripe, we ... decline to specifically address them and leave their resolution, if necessary, to the circuit court upon remand.
 
 
 22
 Id. at 493. Reading the Moulton II opinion as a whole, we conclude that the South Dakota Supreme Court did not decide in Moulton II whether a cabin permit is a constitutionally protected property interest. The cabin owners have cited no other cases, and we have found none, which so hold.
 
 
 23
 A state may also create a constitutionally protected interest by establishing statutory or regulatory measures that impose substantive limitations on the exercise of official discretion. Hewitt v. Helms, 459 U.S. 460, 470, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983) (liberty interest); Littlefield v. City of Afton, 785 F.2d 596, 599, 600-02 (8th Cir.1986) (Littlefield ) (building permit). The plaintiff must show that the state has developed particularized standards or criteria which guide the state decisionmaker. Littlefield, 785 F.2d at 600-02; Baumann v. Arizona Dept. of Corrections, 754 F.2d 841, 844 (9th Cir.1985) (liberty interest). A state statute or regulation which merely establishes procedural requirements does not create a constitutionally protected interest if the state statute or regulation does not place substantive limits on the state officials' authority to act. Olim v. Wakinekona, 461 U.S. 238, 248-51, 103 S.Ct. 1741, 1746-48, 75 L.Ed.2d 813 (1983) (liberty interest).
 
 
 24
 We hold that South Dakota statutes do not define cabin permits as protected property interests. S.D. Codified Laws Sec. 41-2-26 (1985), gives the Commission discretionary authority to grant easements, leases, or permits, including cabin site permits, on property it owns or controls. The only limit on the Commission's discretion is that the "needs of the public be served." Id. This general restriction on the discretion of the Commission does not reflect the state's intention to grant an entitlement to cabin permits.
 
 
 25
 Nor do the procedural requirements established by the South Dakota Administrative Procedures Act create a property interest in the cabin permit. The South Dakota Supreme Court in Moulton II held that a cabin permit is a license, within the meaning of S.D. Codified Laws Ann. Sec. 1-26-1(3), and therefore the "contested case" provisions of the Administrative Procedures Act applies. S.D. Codified Laws Ann. Sec. 1-26-27; Moulton II, at 494. In a "contested case," the party has a right to notice, a hearing, a statement of findings of fact and conclusions of law, and other procedural rights. Id. These are procedural rights only and do not impose any substantive restriction on the discretion of the Commission. Thus, these statutes do not create a protected property interest in the cabin permit.
 
 
 26
 Protected property interests may also be created by rules and understandings between the state and the other party. However, it was not clearly established in 1982 that such understandings concerning cabin permits existed or that such understandings were sufficient to create a protected property interest in cabin permits. It is important to note that the South Dakota Supreme Court in Moulton II remanded the case to the trial court in order that there could be a factual determination whether such understandings had existed and whether a protected property interest had been created as a result.
 
 
 27
 The cabin owners also assert an equal protection claim. The essence of this claim is that the state officials issued or renewed cabin permits in two other state parks at the same time that they refused to renew cabin permits in Custer State Park. We assume for purposes of our review that the state officials committed the acts alleged. Wade v. Hegner, 804 F.2d 67, 70 (7th Cir.1986). Our first task is to determine whether the constitutional right allegedly violated was clearly established at the time of the conduct. Id.; Lowe v. City of Monrovia, 775 F.2d 998, 1011 (1985). The right of similarly-situated persons to be treated equally by the state was well established long before 1982. Wade v. Hegner, 804 F.2d at 71.
 
 
 28
 The state officials argue that they should be granted qualified immunity on the equal protection claim because the cabin owners in Custer State Park are not similarly-situated to those in other South Dakota state parks. The state officials thus request this court to go beyond its determination of the qualified-immunity issue and to consider the merits of the equal protection claim. This court has not previously considered whether an appellate court has jurisdiction to consider the merits of an equal protection claim during the course of an interlocutory review of a denial of qualified immunity. However, the court has held that it has jurisdiction to decide "closely related issues of law" raised in such appeals. Drake v. Scott, 812 F.2d 395, 399 (8th Cir.1977) (Drake ) (court may determine whether property interest protectible by due process exists and whether material issues of fact on the first amendment claim exists); Wright v. South Arkansas Regional Health Center, Inc., 800 F.2d 199, 202-03 (8th Cir.1986) (Wright ) (court has jurisdiction to determine whether genuine issue of material fact exists; court determined that alleged acts in retaliation for exercise of first amendment rights did not rise to the level of constitutional violation).
 
 
 29
 Relying on Mitchell, the court in both Wright and Drake emphasized the importance of shielding public officials from the burden of defending against insubstantial claims. Wright, 800 F.2d at 203; Drake, 812 F.2d at 399. We believe that this rationale applies with equal force to the equal protection claim raised in the present case. We thus hold that an appellate court has jurisdiction to consider whether substantial evidence exists to support an equal protection claim at the same time it considers a denial of qualified immunity for the alleged violation.
 
 
 30
 A plaintiff, alleging an equal protection violation, must first establish that he or she is similarly situated as those to whom the state has accorded different treatment. In this case, the cabin owners in Custer State Park, whose permits were terminated, must show that they are similarly situated to the cabin owners in Shade Hill State Park and Angostura State Park,[2] whose permits allegedly were not terminated.
 
 
 31
 The state officials submitted the affidavit of Lowen Schuett, a former director of Parks and Recreation, who described a number of differences between the Custer State Park and the other two parks. He stated that "[u]nlike Shade Hill and Angostura where boating, fishing, swimming and waterskiing are prevalent, Custer State Park offers the experience of natural beauty in an unspoiled environment" and "Custer State Park cabins are situated in a densely forested section in the ... blackhills among creeks and streams; by contrast Shade Hill and Angostura cabin sites are situated on prairie land that is in close proximity to large lakes where boating and fishing are prevalent." Although the cabin owners submitted affidavits and a statement of controverted facts in opposition to the motion for summary judgment, the cabin owners in these documents do not deny, as required to raise an issue of fact, that these differences exist between Custer and the other state parks.
 
 
 32
 Accepting, as we must, that these differences exist, we hold that there is no genuine issue of material fact that the cabin owners in Custer State Park and Angostura and Shade Hill State Parks are not similarly situated. The cabins are located in different parks and the parks are significantly different in terrain, mission, the compatibility of cabins with other park activities, and the nature of the activity and usage of the cabin owners. Because of the lack of similarity, we need not consider whether the state officials had a legitimate state interest and whether this interest was rationally related to the termination of cabin permits in Custer State Park.
 
 
 33
 The cabin owners lastly argue that the state officials raised the rents on the cabin sites because the cabin owners asserted their due process and equal protection rights. Specifically, the cabin owners argue that the state officials raised the rent because they filed lawsuits challenging the termination of the cabin permits.
 
 
 34
 Access to the courts has long been recognized as a "fundamental constitutional" right. Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (inmate plaintiff); see California Motor Transport Company v. Trucking Unlimited, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972) ("right of access to the courts is ... one aspect of the right of petition"); United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967) (right to petition is among the "most precious of liberties safeguarded by the Bill of Rights"). It has also long been recognized that state officials may not retaliate against individuals because they exercise their constitutional right to seek judicial relief. E.g., Silver v. Cormier, 529 F.2d 161, 163 (10th Cir.1976) (a public official's threat to withhold monies due and owing because of a lawsuit on an unrelated matter was unconstitutional retaliation); Cleggett v. Pate, 229 F.Supp. 818, 821-22 (N.D.Ill.1964) (an individual is entitled to "free and unhampered access to the courts").
 
 
 35
 Neither the state's authority to take the challenged action nor the reasonableness nor propriety of the action is at issue in a retaliation claim. "It is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable ..., even if the act when taken for a different reason, would have been proper." Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir.), cert. denied, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); see Mount Healthy City Board of Education v. Doyle, 429 U.S. 274, 283-84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). This principle is so deeply embedded in the legal and social fabric of our society that no government official could fail to know of it. We thus hold that the district court correctly held that the state officials were not entitled to qualified immunity on the retaliation claim.
 
 
 36
 In summary, we hold that the district court correctly held that the state officials were not entitled to qualified immunity on the retaliation claim. However, we conclude that the district court erred in failing to grant summary judgment on the basis of qualified immunity on the due process and equal protection claims.
 
 
 37
 Accordingly, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Max Rosenn, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by special designation
 
 
 [1]
 This court held in Wright v. South Arkansas Regional Health Center, Inc., 800 F.2d 199, 203-04 (8th Cir.1986) (Wright ), that an appellate court, considering an interlocutory appeal of a denial of qualified immunity, has jurisdiction to decide whether there is any substantial evidence that the defendants violated the plaintiffs' rights. The court in Wright acknowledged that the substantial evidence question does not involve qualified immunity in the same sense as used in Mitchell v. Forsyth, 472 U.S. 511 (1985), and thus review of the substantiality of the evidence goes a step beyond Mitchell. Wright, 800 F.2d at 203. The court, however, reasoned that interlocutory review on the merits, at the same time the qualified immunity question is reviewed, is fully consistent with the spirit and purpose of Mitchell, which is to shield public officials from the "burden of trial on insubstantial claims." Id
 In Drake v. Scott, 812 F.2d 395 (8th Cir.1987), this court expressly held that once a court has jurisdiction over an interlocutory appeal under Mitchell, the court also has jurisdiction to decide closely related issues of law, such as whether the complaint fails to state a claim because of the absence in a property interest protected by the due process clause. Id. at 399. The property interest question was viewed as "analytically antecedent to ... the qualified-immunity issue...." Id.
 
 
 [2]
 Shade Hill and Angostura cabin sites are on land owned by the United States government which the department manages under contract with the United States Department of the Interior and the Custer cabins are on state owned land