———————

No. 94-4075

———————

Kenneth R. Jennings,          *
                              *
          Appellant,          *
                              *   Appeal from the United States
     v.                       *   District Court for the
                              *   Western District of Missouri.
George Lombardi; Vernon Heath; *
Dora Schriro,                 *
                              *
          Appellees.          *

———————

          Submitted: September 15, 1995

              Filed:  November 30, 1995

———————

Before FAGG, MAGILL, and MURPHY, Circuit Judges.

———————

MAGILL, Circuit Judge.

     Kenneth Jennings, a Missouri inmate incarcerated in Arkansas, appeals
the district court's[1] order granting summary judgment against him on his
42 U.S.C. § 1983 claim that defendants, Missouri prison officials, violated
his Fourteenth Amendment rights by withholding prison wages for work he
performed in Arkansas.  We affirm.

                              I.

     Jennings was convicted in a jury trial in Missouri state court

---

[1]The Honorable Scott O. Wright, United States District Judge
for the Western District of Missouri.

for second degree murder on November 4, 1983, and he received a thirty-year sentence. Because he is a former corrections officer at the Missouri State Penitentiary, Jennings requested an out-of-state transfer pursuant to the Interstate Corrections Compact (Compact) in force between Missouri and Arkansas. Jennings is currently serving his sentence in an Arkansas penal institution, where he was transferred on June 26, 1984.

Arkansas regulations require all persons incarcerated in Arkansas to work. Pursuant to § 12 of the Compact, Jennings was to receive the same financial compensation for labor performed in the Arkansas prison as an Arkansas inmate. However, Arkansas inmates do not receive wages for their prison labor; instead, they receive good-time credits which can reduce their time of incarceration. Thus, even though prisoners incarcerated in Missouri are paid for their prison labor, see Mo. Rev. Stat. § 217.255 (1986 & Supp. 1989), and under Article IV(e) of the Compact enabling statute, Missouri inmates incarcerated in other states retain those rights they would have had if incarcerated in Missouri, Mo. Rev. Stat. § 217.535 (1986), Jennings has received neither wages nor good-time credits for his labor.

Contending that Missouri law created a property interest in prison wages, Jennings brought suit in district court to recover the amount that he would have been paid for his labor if he had been incarcerated in Missouri (or, alternatively, to receive good-time credits).[2] The district court granted summary judgment to the defendants, holding that the term "rights" in § 217.535 does not encompass prison wages. This appeal followed.

---

[2]Jennings' claim for good-time credits challenges the duration of his confinement, and thus his sole federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Because he had not exhausted state remedies, Jennings properly dropped this claim.

-2-

## II.

To establish a claim under 42 U.S.C. § 1983, Jennings must allege a deprivation of a right, privilege, or immunity secured by the Constitution and laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981).  Because "[t]here is no constitutional right to prison wages and any such compensation is by the grace of the state," Hrbek v. Farrier, 787 F.2d 414, 416 (8th Cir. 1986), and because "the Interstate Corrections Compact has not been transformed into federal law, and . . . cannot be a basis for [an inmate's] 42 U.S.C. § 1983 claim," Stewart v. McManus, 924 F.2d 138, 142 (8th Cir. 1991), Jennings must show that he has a property interest in prison wages, protected by the Fourteenth Amendment, to succeed in this § 1983 suit.

The Fourteenth Amendment prohibits states from depriving any person of property without due process of law.  The Supreme Court has noted that

> [t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. . . .
>
> Property interests, of course, are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576-77 (1972).

This Circuit uses a two-part test to determine whether a state statute or policy is sufficient to create a constitutionally protected property interest.  A statute, regulation, or official

policy pronouncement will give rise to a protected property interest only where (1) it contains particularized substantive standards or criteria that guide the decisionmakers, and (2) it uses mandatory language requiring the decisionmakers to act in a certain way, thus limiting the official's discretion. Craft v. Wipf, 836 F.2d 412, 417 (8th Cir. 1987). Where the statute or policy is only procedural, or where it grants to the decisionmaker discretionary authority in implementing it, a protected property interest is not created.

Under the Compact, "[t]he fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." Mo. Rev. Stat. § 217.535. Jennings contends that, because he would have received wages had he been incarcerated in Missouri, he should receive wages for work performed in Arkansas. We disagree.

Missouri law provides that "[t]he [Division of Adult Institutions] shall adopt rules and regulations for establishing in each of the correctional facilities a system of compensation to the offenders confined in the facilities." Mo. Rev. Stat. § 217.255. This section does not itself mandate that prisoners incarcerated in Missouri receive any specific level of compensation. Instead, it leaves unfettered discretion to the Division of Adult Institutions (Division) to establish terms for payment of wages. Because of this discretion, any property rights in prison wages must be found in the applicable regulations. Bounds v. O'Dell, 873 F. Supp. 221, 223 (E.D. Mo. 1995), aff'd, 61 F.3d 908 (8th Cir. 1995).

The Division enacted regulatory guidelines for paying wages. Division of Adult Institutions, Rule 20.120.040 (1984 & Supp. 1988), amended and reissued as Division of Adult Institutions, Institutional Services Procedure No. IS22-1.5 (1992). While no regulations specifically cover prison wages for Missouri inmates

incarcerated elsewhere, the prison wages regulations generally applicable in Missouri, plus the Compact in force between Missouri and Arkansas, indicate that Missouri did not intend to create a property interest in prison wages for Missouri prisoners incarcerated elsewhere.

Several factors lead us to this conclusion. First, the regulations in force from February 1984 to October 1992[3] stated that compensation for individual inmates shall be determined "based on available funds, the performance of the inmates, and the value of their work to the institution." Rule 20.120.040. Thus, prison wages are not an entitlement, but are linked to the value received from inmate labor by Missouri institutions. Under § 12 of the Compact, however, Arkansas retains the economic benefits of labor performed by Missouri inmates incarcerated in Arkansas. We can discern no intent on the part of Missouri to subsidize the prison labor in Arkansas when Missouri receives no benefit from such labor.

Second, the regulations stated that "[i]nmate wages are a positive behavior incentive." Rule 20.120.040. Prison wages are thus viewed as a "carrot" that entices inmates to behave in a peaceful manner, ensuring safety in the Missouri prisons. Paying wages to inmates incarcerated out-of-state would not further this

---

[3]In October 1992, the prison wages regulations were rewritten and the precatory language discussed below was not included in the new version. While the removal of this language does create some uncertainty as to the scope of the right to receive prison wages, the best interpretation of this action is that the Division wanted to draft a more streamlined regulation. Absent clear evidence that the Division wanted to reverse course and grant to Missouri inmates incarcerated elsewhere a right to receive prison wages, we do not believe that the removal of precatory language was intended to accomplish this result.

purpose.[4]

Finally, § 12 of the Compact states that prison wages "shall be paid to inmates of the sending state on the same basis as to inmates of the receiving state."  In enacting this provision, the Department of Corrections (Department) understood that the prison wages regulations were not applicable to Missouri inmates incarcerated elsewhere (otherwise, the wages guidelines and the Compact, both authorized by the Department,[5] would be contradictory).  In light of the purposes of the wages regulations discussed above and the reasonableness of the Department's implied construction, we will defer to the Department's interpretation.  Cf. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45 (1984) (in federal administrative law, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer").

The right to receive prison wages does not attach as a consequence of being convicted in Missouri; rather, the right is dependent upon actual in-state incarceration.  The triggering event for the application of the Compact, incarceration in another state, negates the element upon which the paying of wages is dependent,

---

[4]We acknowledge that there are other potential reasons for paying prison wages.  For example, prison wages could serve a rehabilitative purpose or could be used by the inmates to buy personal necessities.  However, there is no indication that Missouri considered these factors and, absent a clear statement from the state, we will not impute such an understanding to the Division of Adult Institutions.

[5]The wages guidelines technically were promulgated by the Division of Adult Institutions, a subdivision of the Department. However, the Department is charged with overseeing and supervising all programs of the Division.  Mo. Rev. Stat. § 217.020 (1986 & Supp. 1989).

incarceration in Missouri.[6]  Thus, receipt of prison wages does not fall within the ambit of protected rights under § 217.535.

### III.

We find that Jennings does not have a property interest in receiving prison wages while incarcerated in Arkansas.  Accordingly, the opinion of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]Jennings mistakenly relies upon Hayes v. Lockhart, 754 F.2d 281, 284 (8th Cir. 1985) (per curiam), which involved a claim for good-time credits earned by an Arkansas inmate incarcerated in Florida pursuant to an Interstate Corrections Compact.  Because the compact at issue provided that Arkansas inmates incarcerated elsewhere would retain the same rights as those Arkansas inmates incarcerated in Arkansas, the court held that Hayes was entitled to good-time credits.  However, the panel in that case did not analyze whether the right in question was dependent upon actual in-state incarceration and therefore Hayes is inapposite.