# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1524

_____

Sandra K. Dunham, D.V.M.,     *

    *

       Appellant,     *

    *    Appeal from the United States

     v.     *    District Court for the Eastern

    *    District of Arkansas.

George Wadley, D.V.M.;     *

Wingfield Martin;     *

Everett I. Rogers, D.V.M.;     *

G. C. Blair, D.V.M.;     *

James W. Waymack, D.V.M.;     *

Donald I. Mayfield, D.V.M.;     *

Gary F. Strickland, D.V.M.; and     *

Sherry Glover,     *

    *

       Appellees.     *

_____

Submitted: September 16, 1999

Filed: November 10, 1999

_____

Before BOWMAN, LAY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Sandra Dunham, a veterinarian, appeals the decision by the district court[1] to grant the defendants' motion for summary judgment on her claims under 42 U.S.C. § 1983 and Arkansas law. The defendants were members of the Arkansas Veterinary Medical Examining Board at all times in question.

Dr. Dunham contends that a licensing exemption contained at the relevant time in the Arkansas statutes, see Ark. Code Ann. § 17-99-307(b)(8) (1994) (repealed 1995), gave her a constitutionally protected property interest and that the defendants deprived her of it without due process. The district court held that although Dr. Dunham qualified for the exemption, such a qualification did not establish a property interest that was protected under state law. The district court further held that the board members were absolutely immune from suit by virtue of the fact that their proceedings were quasi-judicial in nature. We affirm the district court's judgment.

I.

The defendants participated in meetings of the board during which they considered accusations that Dr. Dunham was practicing veterinary medicine without a license in violation of Ark. Code Ann.§ 17-101-312(a). Dr. Dunham was not licensed to practice veterinary medicine in Arkansas, but was in the process of obtaining an Educational Commission for Foreign Veterinary Graduates (ECFVG) certificate. One subsection of the Arkansas statutes at the relevant time provided that "[t]his chapter shall not be construed to prohibit ... [a] graduate of a foreign college of veterinary medicine who is in the process of obtaining an [ECFVG] certificate from performing duties or actions under the direction and supervision of a licensed veterinarian." See Ark. Code Ann. § 17-99-307(b)(8) (1994).

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

The board interpreted this licensing exemption for ECFVG candidates as requiring the supervising licensed veterinarian to be physically present at the clinic where the ECFVG candidate was practicing. The board had received information that Dr. Dunham was practicing at two clinics without a licensed veterinarian on site and therefore sent "cease and desist" letters to Dr. Dunham and her two employers. Each employer then terminated her employment. Dr. Dunham thus claims that the letters to the clinics caused her employment to be terminated. (The board subsequently petitioned in Arkansas state court to enjoin Dr. Dunham from any future unauthorized practice of veterinary medicine.)

Dr. Dunham contests the board's conclusion that she was outside the scope of the statutory exemption and was therefore unlawfully practicing veterinary medicine. The board's letters invited Dr. Dunham to call the board's office if she had any questions, but she testified that she did not do so because she "became aware that for [her] to have attempted to discuss [her] situation would have been futile." She argues that the board should have given her the opportunity to demonstrate that her actions fell within the exemption and that the defendants' failure to give her this opportunity deprived her of due process.

II.

To establish a claim under 42 U.S.C. § 1983, Dr. Dunham must show a deprivation of a right, privilege, or immunity secured by the Constitution or the laws of the United States. See Montano v. Hedgepeth, 120 F.3d 844, 848 (8th Cir. 1997). Dr. Dunham asserts that the defendants deprived her of property without procedural due process of law and thus in violation of the fourteenth amendment.

The analysis of a procedural due process claim must begin with an examination of the interest allegedly violated. See Riley v. St. Louis County, 153 F.3d 627, 630 (8th Cir. 1998), cert. denied, 119 S. Ct. 1113 (1999). Property interests such as the one claimed by Dr. Dunham derive from existing rules that stem from an independent

-3-

source, such as state law. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972); see also Singleton v. Cecil, 176 F.3d 419, 421-22 (8th Cir. 1999) (en banc), petition for cert. filed, No. 99-376 (U.S. Aug. 31, 1999). Dr. Dunham maintains that Ark. Code Ann. § 17-99-307(b)(8) (1994) provided her with a property interest in practicing veterinary medicine that was protected by the fourteenth amendment. We disagree.

The Supreme Court has said that "[t]he hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982). We have held that a state statute or policy can create a constitutionally protected property interest, first, when it contains particularized substantive standards that guide a decision maker and, second, when it limits the decision maker's discretion by using mandatory language (both requirements are necessary). See Jennings v. Lombardi, 70 F.3d 994, 995-96 (8th Cir. 1995). Statutes or policies that are only procedural, or that grant to a decision maker discretionary authority in their implementation, in contrast, do not create protected property interests. Id. at 996.

The statute provides that "[n]o person may practice veterinary medicine in this state who is not a licensed veterinarian or the holder of a valid temporary permit issued by the board." See Ark. Code Ann. § 17-101-307(a). The subsection that listed exemptions to that requirement at the relevant time stated that "[t]his chapter shall not be construed to prohibit ... [a] graduate of a foreign college of veterinary medicine who is in the process of obtaining an [ECFVG] certificate from performing duties or actions under the direction and supervision of a licensed veterinarian." That subsection, § 17-99-307(b)(8) (1994), along with eight other subsections, therefore provided a statutory exemption from the general prohibition on the unlicensed practice of veterinary medicine.

We believe, however, that the statute's exemption did not create a protectable interest, because it did not entitle Dr. Dunham to do anything; she was merely

exempted from a licensing requirement. The statute did not change Dr. Dunham's legal status in any way: If the licensing requirement had not been enacted, she would have been entitled to practice veterinary medicine without a license, which is precisely the right that she is presently claiming. Her exemption from the licensing requirement therefore created no constitutionally protected property interest. See Roth, 408 U.S. at 576, 578, and Jennings, 70 F.3d at 996.

III.

It may well be that Dr. Dunham had a liberty interest in practicing veterinary medicine, a right created not by the statute on which she relies but one that the fourteenth amendment nevertheless protects. See generally Conn v. Gabbert, 119 S. Ct. 1292, 1295-96 (1999); see also Roth, 408 U.S. at 571-72. Although Dr. Dunham makes no such argument here, we do not want to be understood as saying that such a liberty interest does not exist or that we would have rejected the argument that such an interest did exist if Dr. Dunham had made it. But even if Dr. Dunham did have a constitutionally protected liberty to be a veterinarian, we believe that her claim would have failed because the defendants are entitled to absolute immunity.

Persons who perform quasi-judicial functions are entitled to absolute immunity. See Butz v. Economou, 438 U.S. 478, 512-16 (1978); see also Kwoun v. Southeast Missouri Professional Standards Review Organization, 811 F.2d 401, 407 (8th Cir. 1987). The Supreme Court has held that absolute immunity is appropriate when an official's functions are similar to those involved in the judicial process, see Butz, 438 U.S. at 513, an official's actions are likely to result in lawsuits for damages by disappointed parties, see id. at 515, and sufficient safeguards exist in the regulatory framework to control unconstitutional conduct, see id. at 512. See also Ostrzenski v. Seigel, 177 F.3d 245, 249 (4th Cir. 1999), and Romano v. Bible, 169 F.3d 1182, 1187 (9th Cir. 1999).

The board here consisted of five members who were appointed by the governor for five-year terms. See Ark. Code Ann. § 17-101-201(b). Four of the members were licensed veterinarians, see § 17-101-201(b)(1), and one of the members was a non-licensed public citizen, see § 17-101-201(b)(2). The membership terms are arranged so that one expires every year. In cases involving complaints of unauthorized practice, the statute empowers the board to conduct investigations, hold hearings, administer oaths, receive evidence, issue subpoenas, make factual and legal determinations, and enter orders consistent with the findings. See § 17-101-203(4), § 17-101-203(10). The statute also empowers the board to bring proceedings in state court to enforce the statutory provisions. See § 17-101-203(11).

The board discussed Dr. Dunham's situation during two scheduled meetings, maintained detailed minutes of each meeting, and considered investigative reports that were prepared in her case. Following the meetings, the board issued orders in the form of letters sent to Dr. Dunham and two of her employers informing them of the board's conclusion that Dr. Dunham was engaging in the practice of veterinary medicine without a proper license, and warning that the employers themselves would be subject to criminal punishment if they did not "cease and desist" from their employment of her. Dr. Dunham in fact agrees that the letters were not mere requests, but, rather, "threatened criminal prosecution and future adverse administrative action should she fail to comply."

The letter to Dr. Dunham's first employer concluded that "[i]t is *necessary* ... for you to cease and desist from employing any person to practice veterinary medicine in this state who is not duly authorized [to do so]" (emphasis supplied). The board also subpoenaed Dr. Dunham to attend a hearing at which her second employer agreed to terminate her employment.

To the extent that the board weighed evidence, made factual determinations, determined sanctions, and issued written decisions, we conclude that these duties are functionally comparable to the duties performed by courts. See Romano, 169 F.3d at 1187. Cf. Cleavinger v. Saxner, 474 U.S. 193, 202-06 (1985). We further conclude that the board's actions are likely to result in lawsuits for damages by disappointed parties such as Dr. Dunham, that sufficient safeguards exist in the Arkansas regulatory framework to control unconstitutional conduct, and that defendants are therefore protected by quasi-judicial immunity. See Butz, 438 U.S. at 512-16; see also O'Neal v. Mississippi Board of Nursing, 113 F.3d 62, 65-66 (5th Cir. 1997).

While some of the board's functions, such as bringing an enforcement proceeding in Arkansas state court, might have been prosecutorial in nature, we note that courts have also granted absolute immunity to actors who perform such prosecutorial functions. See, e.g., Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 701 (1st Cir. 1995), and Horwitz v. State Board of Medical Examiners, 822 F.2d 1508, 1515 (10th Cir. 1987); see also Mishler v. Clift, 1999 WL 692011, at #7, #15-#21 (9th Cir. Sept. 8, 1999).

We agree with the reasoning of these cases, and we note, furthermore, that Dr. Dunham produced no evidence showing that the defendants acted in non-judicial or non-prosecutorial capacities, or that they acted in "complete absence of all jurisdiction," Duty v. City of Springdale, Arkansas, 42 F.3d 460, 462 (8th Cir. 1994) (per curiam). See generally Martin v. Hendren, 127 F.3d 720, 721 (8th Cir. 1997). Since the defendants' actions were functionally comparable to those of judges and prosecutors, they are entitled to absolute immunity.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.