800 F.2d 199
 Jack B. WRIGHT, Appellee,
v.
SOUTH ARKANSAS REGIONAL HEALTH CENTER, INC., and Edwin B.
Alderson, Jr., L. Andrew Sheppard, Paul A. Abdella, Rodney
Landes, Jr., James B. Weedman, the Rev. Charles W. Brown,
and Dana Green, individually and as members of the Board of
Directors of South Arkansas Regional Health Center, Inc.,
and Ray Scott, Director of the Department of Human Services,
State of Arkansas, Appellant.
 No. 86-1262.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 14, 1986.
Decided Sept. 2, 1986.
 
 E. Jeffrey Story, Little Rock, Ark., for appellant.
 Counsel for appellee did not present oral argument.
 Before McMILLIAN, ARNOLD, and WOLLMAN, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 Ray Scott, director of the Arkansas Department of Human Services, appeals from the District Court's denial of his motion for summary judgment based on qualified immunity. Mr. Scott was named as a defendant in a lawsuit filed under 42 U.S.C. Sec. 1983 by Jack B. Wright, former director of the South Arkansas Regional Health Center, Inc. (SARHC), in El Dorado, Arkansas. Mr. Wright alleges that his termination as director violated the Due Process Clause of the Fourteenth Amendment and that the firing was triggered by Mr. Scott's precipitous reporting to federal authorities of potential irregularities at SARHC. The lawsuit further claims that Mr. Scott's actions, which plaintiff alleges included the furnishing to investigators of false information, were motivated by a desire to retaliate politically against Mr. Wright. The District Court denied defendant's motion for summary judgment and Mr. Scott immediately appealed on the basis of the Supreme Court's decision in Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We take jurisdiction of this appeal, and reverse.
 
 I.
 
 2
 SARHC is a private mental health care organization which gets the bulk of its funding from the state and federal governments; Mr. Wright was its executive director from 1972 until he was fired by the board of SARHC on August 23, 1984, approximately two months after Mr. Scott indirectly received information from an SARHC employee about alleged financial irregularities at the center. Defendant had department investigators interview several persons connected with the center and then took the information thus gathered to the United States Attorney in Little Rock. Pursuant to a search warrant, federal investigators then seized and impounded SARHC records; no indictments followed, but the Center Board also initiated an investigation into Mr. Wright's dealings and voted to dismiss him. This lawsuit was filed on June 21, 1984 against SARHC and its board of directors; Ray Scott was added as a defendant on December 26, 1985, and his motion for summary judgment was filed January 23, 1986.
 
 
 3
 In essence, plaintiff alleges that Mr. Scott, in order to retaliate against him for the exercise of First Amendment rights, made false accusations of crimes against him, leading to his firing without due process by co-defendants. Amended Complaint p 8. During his deposition, Mr. Wright said "there was an ongoing disagreement between me and Ray Scott," Plaintiff's deposition at 59, dealing both with funding issues and with mental health treatment philosophies. As a result, "[w]hen [Governor] Bill Clinton was going into office, I asked [him] as part of my agreement to help his campaign to not reappoint Ray Scott to his office," id. at 96-97. Mr. Scott's response, according to plaintiff, set in motion the events leading to his dismissal.
 
 
 4
 Mr. Scott's motion for summary judgment argued principally that he was protected by the doctrine of qualified immunity. The District Court denied both the motion for summary judgment and defendant's motion for a continuance pending resolution of this issue on appeal. The writer of this opinion granted an emergency stay of further proceedings in the District Court under Fed.R.App.P. 8(a) on February 27, 1986, which was continued by the panel pending the outcome of the present appeal.
 
 II.
 
 5
 Although neither of the parties has questioned our authority to hear Mr. Scott's appeal at this stage of the litigation, the Court must first consider whether we have jurisdiction before turning to the merits of this case.
 
 
 6
 The general rule is that the courts of appeals may, under 28 U.S.C. Sec. 1291, hear appeals only from "final decisions" of the district courts; usually, a denial of summary judgment is not treated as final and cannot be appealed until the conclusion of a case on the merits. One exception to the final-decision rule, however, is the collateral-order doctrine enunciated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under Cohen, the courts of appeals may consider those decisions "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id. at 546, 69 S.Ct. at 1225. Rejection of a claim of absolute immunity, for example, is immediately appealable. Such immunity is violated when a person claiming it is forced to stand trial; a finding in the claimant's favor cannot undo the fact that such a person had to defend himself or herself in the first place.
 
 
 7
 In Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court applied similar logic to the doctrine of qualified immunity, premising its decision on the need to protect officials from the disruptions of going to trial as well as from liability for money damages. Id. at 2815. Qualified immunity, the Court said, is "an immunity from suit rather than a mere defense to liability; and ... it is effectively lost if a case is erroneously permitted to go to trial." Id. at 2816 (emphasis in original). Mitchell further reasoned that such a denial was immediately appealable because it "conclusively determines the defendant's claim of right not to stand trial," ibid. (emphasis in original). The Court also considered the issue of qualified immunity to be conceptually divisible from the plaintiff's claim on the merits: "the appealable issue is a purely legal one: whether the facts alleged ... support a claim of violation of clearly established law." Id. at 2816 n. 9. Therefore, the Court said, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable final decision." Id. at 2817.
 
 
 8
 Since Mitchell was decided, a number of courts of appeals have been asked to take jurisdiction of immediate appeals by public officials denied summary judgment premised on qualified immunity, and all have done so. De Abadia v. Izquierdo Mora, 792 F.2d 1187 (1st Cir.1986); Huron Valley Hospital, Inc. v. City of Pontiac, 792 F.2d 563 (6th Cir.1986); Carson v. Block, 790 F.2d 562 (7th Cir.1986); Fernandez v. Leonard, 784 F.2d 1209 (1st Cir.1986); Flinn v. Gordon, 775 F.2d 1551 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986); Lojuk v. Johnson, 770 F.2d 619 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986); Ricci v. Key Bancshares of Maine, Inc., 768 F.2d 456 (1st Cir.1985). See also Helton v. Clements, 787 F.2d 1016 (5th Cir.1986) (per curiam) (holding that the refusal to consider a motion for summary judgment based on qualified immunity is, like the denial of such a motion, immediately appealable).[1]
 
 
 9
 As we have noted, plaintiff's theory here is essentially that defendant, motivated by a desire to retaliate against plaintiff for the exercise of First Amendment rights, initiated an investigation that led to plaintiff's losing his job. Defendant's motion for summary judgment was based on the argument that there was no substantial evidence to support this theory. This sort of defense is not identical to the kind of question involved in Mitchell. There, current law was clear that the defendant had violated the plaintiff's constitutional rights. The question was whether, at the time of the acts in question, defendant knew or should have known that those rights were clearly established. To answer that question, the Court had only to examine the cases extant at the time of the acts alleged and make a judgment of law as to what a reasonable public official would or should have known at the time. The present case does not involve qualified immunity in quite that sense. Here, there is no doubt that the right to be free from official retaliation for the exercise of First Amendment rights has been clear all along. The issue is rather whether there is any substantial evidence that what Mr. Scott concededly did in fact violated those rights. The defendant's motivation is crucial to the very existence of a constitutional claim. Without an impermissible motive to retaliate, Mr. Scott did nothing more than perform his duty of reporting suspected violations of the law.
 
 
 10
 The question presented is thus both less clearly "legal," as opposed to "factual," than the issue in Mitchell, and less clearly separable from the merits, one of the requirements for immediate appealability under Cohen. We nevertheless hold that an interlocutory appeal is proper. If this is a step beyond Mitchell, it is a small one, and one fully consistent with the spirit and purpose of the Supreme Court in that opinion. It is important for public officials to be shielded from the burden of trial on insubstantial claims. Their right not to be forced to trial will be lost if an immediate appeal is not allowed. And the issue is, on close analysis, separable from the merits. To put it in terms of the present case, the issue is not whether defendant was improperly motivated in fact, but, rather, whether, when all the facts are viewed in the light most favorable to plaintiff, there is any genuine issue, triable to a jury, of improper motivation. There is a sense in which this sort of question is one of "law," just as the question whether someone is entitled to a directed verdict is in some sense one of "law."
 
 
 11
 We believe this is what Mitchell means, see 105 S.Ct. at 2816, and courts of appeals that have faced this question have so held. See, e.g., Fernandez v. Leonard, 784 F.2d 1209, 1213-14 (1st Cir.1986); Ricci v. Key Bancshares of Maine, 768 F.2d 456 (1st Cir.1985); Lojuk v. Johnson, 770 F.2d 619, 621 n. 2 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986). See also Tubbesing v. Arnold, 742 F.2d 401 (8th Cir.1984).
 
 
 12
 Having accepted jurisdiction of this appeal, we now turn to the merits of Mr. Scott's claim.
 
 II.
 
 13
 Mr. Wright's lawsuit appears to make two claims against Mr. Scott. The first is that the defendant, "for purposes of political retaliation against the plaintiff," Amended Complaint p 8, precipitously and maliciously gave federal criminal justice authorities information--at least some of it supposedly false--about alleged misdeeds at SARHC, instigating the investigation of Mr. Wright and violating the First Amendment. The second claim is that as a result of Mr. Scott's actions, "law enforcement officers," id., gave false information about plaintiff to the SARHC board which, in a secret meeting, then decided to fire plaintiff.[2] In an affidavit attached to his motion for summary judgment,[3] Mr. Scott admits that he ordered a department investigator to interview SARHC employees about potentially illegal activities and then delivered the resulting information to federal authorities. He denies involvement beyond this in the federal or state investigations of Mr. Wright, denies any involvement at all in the deliberations of the SARHC board, and denies knowing or thinking that any information he did provide was false.
 
 
 14
 Mr. Wright's first claim--that defendant retaliated against him for the exercise of First Amendment rights by making false accusations of crime--is the more difficult. If properly supported, such an allegation could make out a violation of clearly established law and might defeat a motion for summary judgment on the ground of qualified immunity. But the acts alleged here simply do not rise to the level of a constitutional violation. Plaintiff claims that he and Mr. Scott had had numerous disputes over almost a decade's association; that the defendant knew of plaintiff's offer to support then former Governor Clinton's comeback bid if Mr. Scott were later fired; that on hearing rumors about the SARHC operations, Mr. Scott jumped at the chance to get rid of plaintiff and, ignoring proper channels, took his collected gossip to the U.S. Attorney. Plaintiff also alleges that defendant presented federal authorities with two species of false information--untrue accusations of wrongdoing and inaccurate Medicaid payment schedules which indicated possible fraud.
 
 
 15
 Plaintiff points to no evidence that Mr. Scott's motivation was unconstitutional. Mr. Wright's former counsel said of defendant in deposition that "I think he saw a chance to get Jack Wright out of his hair and make a big name for himself by instigating a major federal investigation [which ordinarily] ... would have been merely cause for him to send down a team of auditors." Gillaspie deposition at 82. We think this and similar statements by Mr. Wright, Plaintiff's deposition at 109, insufficient to overcome plaintiff's responsibility under Rule 56(e) to do more than rest on his pleadings. See Tubbesing v. Arnold, 742 F.2d 401, 405 & n. 5 (8th Cir.1984). Assuming even that Mr. Scott knew of Mr. Wright's attempt to get him dismissed, that the two did not have a cordial relationship, that Mr. Scott could have proceeded in a more discreet fashion than he did, and that some inaccurate information reached investigating authorities, this Court does not consider plaintiff's claims to rise above mere allegations of malice. See Harlow v. Fitzgerald, 457 U.S. 800, 817, 102 S.Ct. 2727, 2737-38, 73 L.Ed.2d 396 (1982). Disagreements are the norm in governmental affairs, and if this unremarkable level of political name-calling were sufficient to withstand summary judgment here, many public officials would be open to charges they violated First Amendment rights in their regular dealings, contrary to the Supreme Court's clearly stated desire to limit both the number and duration of lawsuits filed against government officers. Defendant attached to his motion for summary judgment copies of the initial investigator's reports to his office; plaintiff does not, and could not, deny the seriousness of these allegations from named, longtime employees of SARHC. There is no suggestion here that the way defendant chose to respond violated any state statutes or departmental regulations. See, e.g., Huron Valley Hospital Inc. v. City of Pontiac, 792 F.2d 563, 568-69 (6th Cir.1986). Nor was there any indication that any false information was provided deliberately or recklessly by Mr. Scott, or at his direction. Past political disagreements are not a sufficient basis, in the circumstances of this case, on which to base a reasonable inference of present retaliatory motive.
 
 
 16
 Plaintiff argues that Harlow's elimination of the subjective good faith immunity inquiry does not mean that an allegation of bad faith is to be ignored when it is part of a substantive claim under Section 1983. We recognize that motivation is frequently an issue going to the heart of some lawsuits against public officials, such as civil-rights or First Amendment actions, and that many cases will present factual questions of motivation incapable of resolution on summary judgment. This is not such a case. Here, the record simply does not create a genuine issue of material fact.
 
 
 17
 The second of Mr. Wright's claims is disposed of easily. Mr. Scott was not a member of the SARHC Board, nor did he have authority over either the Board or Mr. Wright.[4] Plaintiff offered no evidence to demonstrate that Mr. Scott in any way participated in the Board's decision to terminate; plaintiff's former counsel repeatedly said in deposition that as far as he knew, defendant's only participation was to furnish information to federal authorities.[5] Even assuming that the plaintiff's termination by the SARHC Board was accomplished in violation of due process and the Arkansas Freedom of Information Act, there is no indication whatever that defendant Scott played any role in the Board's determination: this is particularly so given the deposition statements of Board members that their decision was based on an investigation by their attorney which dealt with apparent self-dealing by Mr. Wright rather than potential Medicare or Medicaid fraud. And, as we discuss above, there is no indication beyond Mr. Wright's allegation that Mr. Scott knowingly or recklessly provided any false information to investigators. The facts shown by plaintiff simply do not create a triable issue of fact. The decision of the District Court must, therefore, be reversed. Mr. Wright's claim against the remaining defendants remains in the case.
 
 
 18
 The judgment is reversed, and the cause remanded with directions to dismiss the complaint with prejudice as to the defendant Ray Scott.
 
 
 
 [1]
 In fact, the only Court denying jurisdiction of an appeal premised on Mitchell v. Forsyth appears to be this one: we refused to hear immediately the appeal of private defendants, who were alleged to have conspired with others acting under color of state law and whose summary-judgment motion based in part on qualified immunity was denied. The Court held inapplicable to these defendants Mitchell's rationale that public officials must be protected from the "harassment of suit and trial [lest] ... they ... be afraid to fulfill their duties promptly and properly." Chicago & North Western Transportation Co. v. Ulery, 787 F.2d 1239, 1240 (8th Cir.1986)
 
 
 [2]
 Plaintiff's complaint also alleges a pendent state claim against the SARHC defendants, charging a violation of the Arkansas Freedom of Information Act, Ark.Stat.Ann. Sec. 12-2805
 
 
 [3]
 Defendant's motion for summary judgment included a statement of facts on which Mr. Scott contends there is no genuinely triable issue. Although plaintiff filed a response to the motion, he failed to attach affidavits or other supporting evidence, nor did he file a "separate, short and concise" counter-statement, as required under Local Rule 29, United States District Courts for the Eastern and Western Districts of Arkansas. Defendant contends that plaintiff's failure, under Rule 29, means that this Court must find "Ray Scott acted within the scope of his duties," as alleged in his statement of facts, and "is entitled to judgment in his favor." Appellant's brief at 4. We decline to rule on this formalistic ground; however, we remind plaintiff's counsel that it is their job, not ours or the District Court's, to make the record supporting plaintiff's position opposing summary judgment. The District Court itself, which denied the motion for summary judgment, did not consider plaintiff's procedural omission fatal, and we defer to that court's application of its own rule. A different result might follow if, in a future case, a district court, after clear notice of the possible consequences, should choose to grant summary judgment because of a similar procedural default by the party opposing the motion
 
 
 [4]
 Asked in deposition whether Mr. Scott was his employer, plaintiff responded, "He administers all the contracts so in a way he is," but agreed that defendant did not pay his salary, or make decisions about his job benefits or, most significantly, his termination. Plaintiff's deposition at 108
 
 
 [5]
 The following exchange took place between defendant's counsel and the former counsel to Mr. Wright, who drafted the complaint
 Q: Do you have any evidence--
 A: I do not, no.
 Q: --or proof that mr. scott Did anything besides furnish those interview statements?
 A: And request a federal investigation. That's all I know.
 Gillaspie deposition at 80. (Mr. Gillaspie initially represented Mr. Wright, but withdrew as counsel when it developed that he would be a witness.)