**Michael D. MURPHY, Appellee,**

v.

**Terry D. MORRIS, Kelly Mescher, Appellants,**

and

**Unknown M.T.C.M. Mail Room Personnel.**

No. 87–2026.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1988.

Decided June 16, 1988.

Rehearing and Rehearing En Banc Denied July 27, 1988.

Paul LaRose, Jefferson City, Mo., for appellants.

Daniel P. Card, II, St. Louis, Mo., for appellee.

Before McMILLIAN, WOLLMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Kelly Mescher, an assistant attorney general for the State of Missouri, appeals from the district court's denial of her motion to dismiss this action, brought by Michael Murphy, an inmate of the Missouri Department of Corrections, pursuant to 42 U.S.C. § 1983. Mescher argues that the district court erred in concluding that she is not absolutely immune from suit for acts undertaken in defense of state officials in a prior section 1983 lawsuit brought by Murphy against the state and various state officials. We reverse.

BACKGROUND

This action arises, generally, out of civil litigation filed by Murphy in September of 1984 against the Missouri Department of Corrections and several of its officials. *See Murphy v. Missouri Dep't of Corrections*, 814 F.2d 1252 (8th Cir.1987). Mescher was the assistant attorney general assigned to defend the various state defendants in that case. During trial, Mescher offered into evidence a letter, written by Murphy, which letter purportedly identified Murphy as a member of a group known as the Aryan Brotherhood. In the instant case, Murphy asserts that Mescher obtained this letter by improperly diverting and copying mail received at the institution, and that its introduction into evidence in the prior civil proceeding violated his constitutional rights. Murphy alleges that Mescher conspired with various prison officials to obtain the letter and then to use it in the prior civil proceeding to impeach his credibility. According to his complaint, the letter was sent by Murphy to another inmate in the same institution, Chris Marshall. However, Murphy sent the letter to

Marshall's mother, apparently to avoid limitations placed upon intrainstitutional mail, with instructions to Mrs. Marshall to put the letter in a second envelope and mail it back to her son at the prison. Murphy alleges that the letter was copied when "received at the mailroom * * *, in the same envelope with letters from Mrs. Wanda Marshall of Tucson, Arizona, addressed to her son Chris J. Marshall, # 149616."

Mescher moved to dismiss the complaint, asserting that she is absolutely immune from suit for acts done in furtherance of her defense of the state in a section 1983 action. The district court denied the motion, and Mescher filed this appeal.

## DISCUSSION

### A. Appealability

Before reaching the merits of the appeal, we must first address Murphy's motion to dismiss the appeal, raised just prior to oral argument. Relying on a case recently decided by the First Circuit, *Kaiter v. Town of Boxford*, 836 F.2d 704 (1st Cir.1988), Murphy argues that because Mescher plans to raise the defense of qualified immunity if she is unsuccessful here, the requirements of the collateral order doctrine are not satisfied in this case, and it therefore must be dismissed as an improper interlocutory appeal. In *Kaiter*, the First Circuit concluded that the defenses of absolute and qualified immunity should be considered together, in a single interlocutory appeal. *Id.* at 708. The court determined that an appeal of just one of these claims, while the other remains reserved for later

pretrial proceedings, fails to satisfy the threshold requirement of the collateral order doctrine as set forth in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), that the ruling appealed from fully dispose of the issue presented. *Kaiter*, 836 F.2d at 707. The court said that "the issue of immunity must be subject to one interlocutory appeal in order to establish the defendant's right to avoid trial altogether. There is no need to burden the appellate system and prolong the pretrial process with multiple interlocutory appeals * * *." *Id.*

Mescher, on the other hand, argues that the adoption of such a rule would thwart the purpose of the absolute immunity defense. She asserts that absolute immunity is a distinct legal doctrine, characterized by "its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). In comparison with qualified immunity, which often requires at least a limited amount of discovery and is usually raised by a motion for summary judgment, absolute immunity, Mescher argues, can normally be addressed on the basis of the pleadings alone, through a motion to dismiss.[1] Requiring the state to wait until a ruling has been obtained on qualified immunity before appealing an adverse decision on absolute immunity would purportedly subject the state to unnecessary and potentially extensive discovery proceedings, which the doctrine of absolute immunity, by its nature, is designed to prevent.

---

1. This court has discussed the characteristics of absolute immunity and qualified immunity on more than one occasion. For example, in *Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199 (8th Cir.1986), we addressed the appealability of a denial of a motion for summary judgment on qualified immunity grounds. In discussing the collateral order doctrine, we used absolute immunity as an example, noting that "[r]ejection of a claim of absolute immunity, for example, is immediately appealable. Such immunity is violated when a person claiming it is forced to stand trial; a finding in the claimant's favor cannot undo the fact that such a person had to defend himself or herself in the first place." *Id.* at 202.

Likewise, in *Tubbesing v. Arnold*, 742 F.2d 401 (8th Cir.1984), the court held that pending eq-

uitable claims which are not subject to dismissal on immunity grounds do not foreclose an immediate appeal from an adverse ruling on qualified immunity. The court reasoned that to prohibit interlocutory appeal in such circumstances would "frustrate" the purpose of qualified immunity by subjecting public officials to the burdens of trial. *Id.* at 404 n. 3. "[T]he policies underlying the qualified immunity doctrine which justify the immediate appealability of a denial of summary judgment based thereon are just as compelling in this case as when only money damages are sought." *Id.* at 404. *See also Harlow v. Fitzgerald*, 457 U.S. 800, 807, 814, 102 S.Ct. 2727, 2732, 2736, 73 L.Ed.2d 396 (1982).

Mescher claims that the differences between the doctrines of qualified immunity and absolute immunity warrant a separate appeal, if necessary, to consider each defense. She urges rejection of the analysis employed in *Kaiter*.

■ We agree with Mescher that application of the rule set forth in *Kaiter*, while potentially easing the burden of multiple appeals, would undercut the value of the absolute immunity defense. Absolute immunity operates to protect appropriate defendants from exposure to the litigation process. Like qualified immunity, absolute immunity entitles its possessor to be free from *suit*, not simply from liability. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. *See Nixon v. Fitzgerald*, 457 U.S. 731, 742, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982). If public officials are required to wait to appeal an adverse decision regarding absolute immunity until the court has also ruled on the qualified immunity defense, one of the principal benefits of the absolute immunity defense, freedom from as many of the costs, risks and disruptions of the trial process as possible, would be lost. Whatever additional judicial time and effort is expended in addressing those cases requiring an appeal of both defenses is, in our opinion, time well spent if defendants with absolute immunity are to be protected from burdensome and harassing lawsuits. Thus, we respectfully decline to follow *Kaiter*, and shall proceed to address the merits of Mescher's appeal.

### B. Absolute Immunity

The district court denied Mescher's motion to dismiss, apparently holding that absolute immunity is not available in any circumstance to a state assistant attorney general. Mescher argues that the district court's analysis espouses an improperly narrow view of the absolute immunity doctrine. We agree.

The Supreme Court has extended the doctrine of absolute immunity to encompass various participants in the judicial decisionmaking process, whose duties are deemed integral to the effective, independent operation of the judiciary. The Court has adopted a functional approach toward immunity questions, noting that "[t]he cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location." *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). In *Butz*, the Court held that agency attorneys who introduce evidence and cross-examine witnesses in a government administrative proceeding are entitled to absolute immunity. The Court reasoned that without such protection, attorneys might hesitate to bring forward certain documents or witnesses, for fear of potential liability premised on the quality of the evidence introduced. *Id.* at 517, 98 S.Ct. at 2916. The Court analogized administrative proceedings to criminal prosecutions, and found the functional roles of participants in the administrative process similar to those of judicial personnel, and thus worthy of the same protections afforded to judicial personnel. *See id.* at 512–17, 98 S.Ct. at 2913–16.

Likewise, in *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the Court extended the protection of absolute immunity to witnesses. The Court concluded that the rationale supporting absolute immunity for other participants in the judicial process applies with equal force to a testifying witness, since a witness's apprehension of subsequent damages liability might lead to a reluctance to testify, or once the witness takes the stand, untruthful testimony. *Id.* at 335–36, 103 S.Ct. at 1115–16. The Court examined historical common law immunities for participants in judicial proceedings and concluded that "the common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise—who were integral parts of the judicial process." *Id.* at 335, 103 S.Ct. at 1115. Approaching the issue in a functional manner, as envisioned by *Butz*, the Court found that witnesses do represent an "integral part" of the judicial process, and that witnesses are, therefore, absolutely immune from suit. *See Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976) (Absolute immunity extended to

state prosecuting attorneys, to promote "the vigorous and fearless performance" of a duty "essential to the proper functioning of the criminal justice system.")

We believe that the analysis set forth in *Butz* and *Briscoe* is of equal applicability to the advocacy functions of a state assistant attorney general defending state officials in prisoner civil rights litigation. The traditional requirements for extending absolute immunity are satisfied by a government attorney defending such an action. *See Mitchell*, 472 U.S. at 521–22, 105 S.Ct. at 2812–2813. First, there exists a firm common law and historical basis for the extension of immunity to trial counsel. *Butz*, 438 U.S. at 509, 98 S.Ct. at 2912; *Yaselli v. Goff*, 12 F.2d 396, 402 (2d Cir. 1926), *aff'd*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927). Second, the performance of advocacy functions by an assistant attorney general creates a great potential for entanglement in vexatious litigation. Especially in prisoner litigation, unsuccessful plaintiffs may seek recourse against the attorney for the state because of activities which the litigant finds disturbing. Assistant attorney generals should not be inhibited in the performance of their duties, or in their choice of litigation strategies, by the threat of harassing lawsuits. And, abuses by counsel may be remedied through contempt or professional disciplinary proceedings.

We are convinced that the regular advocacy functions of an assistant attorney general, in defense of.civil rights litigation, are worthy of the protections afforded by absolute immunity. Without such protection, state attorneys will be unable to perform their integral function in the judicial process without fear of harassment or intimidation. *See Butz*, 438 U.S. at 512, 98 S.Ct. at 2913. We therefore follow the lead of the Second Circuit, and hold that a state assistant attorney general's function as a government advocate entitles him or her to absolute immunity from suit for damages. *See Barrett v. United States*, 798 F.2d 565, 571–73 (2d Cir.1986).

We note, however, that this cloak of immunity is limited to the attorney's performance of regular advocacy functions, and like the immunity afforded prosecutors, does not extend to intentional misconduct accomplished outside of the scope of the attorney's function as an advocate for the state. *See Imbler*, 424 U.S. at 429, 96 S.Ct. at 994; *Tower v. Glover*, 467 U.S. 914, 923, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984) (state public defenders are not afforded absolute immunity for intentional misconduct by virtue of alleged conspiratorial action which deprives their clients of federal rights). The immunity envisioned by the common law, and discussed by the Supreme Court, attaches only to those activities within counsel's normal duties as an advocate for his or her client. When an attorney goes beyond those boundaries and commits an act of intentional misconduct, the protections of absolute immunity no longer apply. *Tower*, 467 U.S. at 921, 104 S.Ct. at 2825. *See Williams v. Hartje*, 827 F.2d 1203, 1208–10 (8th Cir.1987) (The advocacy function entails preparatory and other activity outside of the courtroom undertaken "within the role of advocate." In drawing the line between absolutely immune and other activities, the important consideration is not whether the act was one which could be done only by an advocate but whether an act is closely related to the role of the advocate.)

In this case, the plaintiff has alleged, as earlier indicated, that Mescher conspired with corrections department officials to obtain copies of the plaintiff's mail in violation of plaintiff's constitutional rights, and then utilized these materials to impeach the plaintiff in a later civil proceeding. To the extent Murphy's claim is premised upon Mescher's use of the material at trial, Mescher is entitled to the protection of absolute immunity. The introduction of evidence in a judicial proceeding constitutes a normal and regular advocacy function of an assistant attorney general, and may not, therefore, form the basis of a claim pursuant to section 1983.

Additionally, to the extent Murphy's claim is premised upon an alleged conspiracy with prison officials to improperly copy institutional mail, an act which is, arguably, outside of Mescher's legitimate duties as an advocate for the state, and thus not protected by absolute immunity, Murphy

**1106**

lacks standing to pursue the claim against Mescher. Whatever claim Murphy possesses on the basis of the alleged facts, if any, arises out of an improper search and seizure of institutional mail. It is well established that fourth amendment rights are personal, and may not be asserted vicariously. *See United States v. Payner,* 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed. 2d 468 (1980); *Rakas v. Illinois,* 439 U.S. 128, 148–49, 99 S.Ct. 421, 432–33, 58 L.Ed. 2d 387 (1978); *United States v. Nabors,* 761 F.2d 465, 468 (8th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 123 (1985). The mail which was allegedly intercepted and copied in this case was addressed to Chris Marshall and sent from his mother, Mrs. Wanda Marshall. Murphy can claim no legitimate expectation of privacy in another inmate's mail. He has, therefore, suffered no injury with respect to the alleged improper activity, and is without standing to pursue a section 1983 claim premised upon it.

CONCLUSION

Murphy's only cognizable injury in this lawsuit arose from Mescher's use of the letter at trial, an act for which she is protected by absolute immunity. The district court should have dismissed Mescher as a defendant in this action. The decision of the district court denying Mescher's motion to dismiss is reversed.