**Calvin HOLLOWELL, Plaintiff,**

**v.**

**Carroll L. GRAVETT, Sheriff for Pulaski County, Arkansas; Jim Beach, Chief Deputy of Pulaski County; and Ron Oliver, James Whitten, Tommy Holland, Ellis Throckmorton, and William Driggers, Civil Service Commissioners, Defendants. (Two Cases)**

**Nos. LR–C–86–337, LR–C–86–600.**

United States District Court,
E.D. Arkansas, W.D.

Oct. 19, 1988.

See also 118 F.R.D. 473.

Horace Walker, John W. Walker, Little Rock, Ark., for plaintiff.

Robert Jackson, Ivester, Henry, Skinner & Camp, Little Rock, Ark., for defendants.

Gregory T. Jones, Wright, Lindsey & Jennings, Little Rock, Ark., for defendants Givens, Curry and Montgomery.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Pending before the Court are a number of motions for summary judgment. For the reasons set forth below, the motions are granted.

## PROCEDURAL BACKGROUND

These cases arise out of the dismissal of plaintiff as an officer with the Pulaski County Sheriff's Department. The dismissal resulted from allegations made to the Sheriff (defendant Gravett) that plaintiff paid money to have sex with several prostitutes in Little Rock, Arkansas, and therefore engaged in activity unbecoming to a police officer and aided and abetted in the illegal activity of prostitution.

Plaintiff, through retained counsel, filed suit in federal court on April 6, 1986, against Gravett, alleging violation of his constitutional rights to procedural due process in that Gravett did not provide plaintiff with a pretermination hearing. Plaintiff further alleged that defendant discriminated against him on the basis of his race in terminating him. This action was docketed as LR–C–86–183.

On June 17, 1986, plaintiff filed a *pro se* complaint against Gravett, five Civil Service Commissioners, the county attorney for Pulaski County, and the attorney for the sheriff of Pulaski County. This action alleged, *inter alia*, that the posttermination hearing before the Civil Service Commission violated plaintiff's constitutional rights to procedural due process. This action was docketed as LR–C–86–337.

On October 8, 1986, plaintiff filed another *pro se* complaint against the same individuals as those in LR–C–86–337, and added as defendants Jim Beach, the Chief Deputy of Pulaski County; Dave Dillinger, an Arkansas State Police officer; Ed Montgomery, another attorney for Pulaski County; Judge Don Venhaus, the Pulaski County Judge; and Judge Tom Digby, Circuit Judge for Pulaski County. Plaintiff alleged defendants conspired to deprive him of his constitutional rights to equal protection of the law and to discriminate against him on the basis of race. Although not specifically pled, plaintiff appears to assert that defendants conspired to terminate him and bring false charges against him because of his race. Plaintiff also alleged defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff's Title VII claim was dismissed by Order dated November 16, 1987.[1] This case was docketed as LR–C–86–600.

Defendants Givens, Curry, Montgomery and Dillinger have all moved for summary judgment. Each defendant will be discussed separately.

---

1. By Order dated March 20, 1987, Judge Eisele granted Judge Tom Digby's motion to dismiss on the grounds that he was entitled to absolute immunity.

## ANALYSIS

*Defendant Givens*

■ Plaintiff was terminated from his employment with the Pulaski County Sheriff's Department on or about May 1, 1985. Pursuant to Ark.Stat.Ann. § 12–1120 *et seq.*, (recodified as A.C.A. § 14–15–601 *et seq.*) plaintiff requested a trial before the Civil Service Commission. Prior to the hearing, Sheriff Gravett retained the services of Art Givens, an attorney in private practice, on a contractual basis to present the Sheriff's case at the Commission hearing. In mid-May, 1985, Givens met with the four prostitutes who had identified plaintiff as either having paid money to have sex with them or had requested that "dates" be arranged with other prostitutes.

Givens conducted the direct examination of the four prostitutes and offered into evidence their written statements and the results of polygraph examinations which corroborated their testimony. Plaintiff was represented by counsel at the hearing and had the opportunity to cross examine the women and to object to the introduction of evidence. Plaintiff testified at the hearing and called two additional witnesses on his behalf. At the conclusion of the hearing, the members of the Civil Service Commission went into executive session and voted to sustain the decision of the Sheriff to discharge plaintiff. Givens did not participate in the executive session or the decision to uphold plaintiff's dismissal.

Plaintiff makes a number of accusations about Givens. In LR–C–86–337, plaintiff contends that Givens represented the Sheriff's Department in an illegal administrative hearing, that Givens deprived the plaintiff of his constitutional rights by bringing frivolous charges against plaintiff, and by making defamatory statements about plaintiff. In LR–C–86–600, plaintiff alleges that Givens was part of a conspiracy to deprive plaintiff of his constitutional rights and to discriminate against him because he is black. Plaintiff contends that Givens presented false charges against plaintiff, knowing that they were false.

Givens asserts in his motion for summary judgment that he is entitled to absolute immunity in that he was acting in a prosecutorial role. In the alternative, Givens claims that he is entitled to qualified immunity in that he was not violating clearly established law.

In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that prosecutors were absolutely immune from damages claims arising out of their activities in intiating and presenting the state's case. In *Butz v. Economou,* 438 U.S. 478, 515, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978), the Supreme Court applied a functional approach to the scope of immunity. In reasoning that the administrative adjudication process shares many important characteristics with the judicial process, the Court held that agency officials performing functions analogous to those of a prosecutor should be absolutely liable. The Court stated in part:

> We believe that agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment. Because the legal remedies already available to the defendant in such a proceeding provide sufficient checks on agency zeal, we hold that those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.

> . . . . .

> We can see no substantial difference between the function of the agency attorney in presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before a court. In either case, the evidence will be subject to attack through cross-examination, rebuttal, or reinterpretation by opposing counsel.... If agency attorneys were held personally liable in damages as guarantors of the quality of their evidence, they might hesitate to bring forward some witnesses or documents..... We therefore hold that an agency attorney who arranges for the presentation of

evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence.

438 U.S. at 516–517, 98 S.Ct. at 2915–2916.

Givens argues that the Civil Service Commission was a quasi-judicial proceeding, and that his role in presenting the Sheriff's case was functionally comparable to that of a prosecutor. The statute in effect at the time provided that an employee could request a trial before the Commission on the charges alleged as the grounds for discharge, that the employee "shall have compulsory process to have witnesses present at such trial", § 12–1126; that the Commission hearing shall be stenographically recorded, § 12–1124(m); and that the Commission had the power to issue subpoenas, require the attendance of witnesses, and administer oaths, § 12–1131. Furthermore, aggrieved employees were provided the right of appeal to Circuit Court where the Commission's decision was subject to review by the circuit judge who could consider additional evidence upon the request of either the county or the employee. § 12–1126.[2]

The Court is persuaded that the Civil Service Commission hearing was in effect a quasi-judicial proceeding, analogous to the administrative proceeding in *Butz*. See *Williams v. Hartje*, 827 F.2d 1203, 1209 (8th Cir.1987) (coroner's inquest is in effect a quasi-judicial proceeding). The Court is further persuaded that Givens, in presenting the Sheriff's case to the Commission, was functionally comparable to a prosecutor and he, therefore, is absolutely immune from damages for his actions. See *Jones v. Singer Career Systems*, 584 F.Supp. 1253 (E.D.Ark.1984) (hearing referree with the Arkansas Employment Security Division was absolutely immune in that his duties were "functionally comparable" to those of a judge). While the Court has been unable to find any cases concerning the liability of a government advocate before a county civil service commission, the Court notes that the traditional requirements for ex-tending absolute immunity are satisfied in this instance. "These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. at 409, 96 S.Ct. at 985. See also *Murphy v. Morris*, 849 F.2d 1101, 1105 (8th Cir.1988) (state assistant attorney general defending state officials in prisoner civil rights litigation absolutely immune. "Without such protection, state attorneys will be unable to perform their integral function in the judicial process without fear of harassment or intimidation.")

The Court further notes that plaintiff's claim against Givens stems from his role in participating at the Civil Service Commission hearing. The allegations of bringing false charges, simulating legal process, and misrepresenting facts all relate to Givens' "prosecutorial" function and do not defeat Givens' entitlement to absolute immunity.

Plaintiff also asserts that Givens was part of a conspiracy to deprive him of his constitutional rights. Those unsupported and conclusory allegations of a conspiracy cannot defeat Givens' entitlement to absolute immunity. *Myers v. Morris*, 810 F.2d 1437, 1453 (8th Cir.1987). Furthermore, the pleadings and the record are deficient to create a triable issue as to the participation of Givens in a conspiracy to violate plaintiff's civil rights. *Id.*

In sum, the Court finds that Givens is entitled to absolute immunity in his role of representing the Sheriff during the Civil Service Commission hearing. Accordingly, the claims against Givens are dismissed.

*Defendant Curry*

■ The allegations against Stephen Curry stem from his role as county civil attorney. The Pulaski County Quorum Court created the position of county civil attorney pursuant to Ark.Stat.Ann. § 24–137 to 140, now codified at A.C.A. § 16–21–114. According to Curry's uncon-

---

2. Ark.Stat.Ann. § 12–1120 *et seq.* was recodified as A.C.A. § 14–15–601 *et seq.* The statutory pro-visions of the subchapter were repealed by Acts 1987, No. 657, No. 1.

troverted affidavit, his role as legal advisor to the Civil Service Commission including providing the Commission with legal advice concerning questions regarding procedure, evidence and pleadings. Curry did not participate in any prehearing investigations concerning plaintiff, did not participate in the executive sessions, and did not participate in the decision to uphold the termination of plaintiff. According to the submissions, about the only role Curry had with regard to plaintiff's termination and subsequent hearings was to perform a legal analysis regarding the admissibility of polygraph test results in legal proceedings. As Curry notes, plaintiff's counsel never objected to the introduction of the polygraph test results at the Commission hearing, so the issue of admissibility did not arise during the course of the hearing. Curry did not put on any witnesses or render any advice to the Commission members during the hearing.

Curry argues that he is entitled to absolute immunity in that as legal advisor, he served in a quasi-judicial role and acted "as an arm" of the decision-making body. *See Henderson v. Lopez*, 790 F.2d 44, 46–47 (7th Cir.1986) (assistant state's attorney functions in quasi-judicial role when advising county officials, and is absolutely immune from civil rights damage suits). While Curry's argument has some merit, the Court need not determine whether Curry's activities were quasi-judicial and therefore entitled to absolute immunity, as the Court is persuaded that Curry is entitled, at least, to a defense of qualified immunity. *See Evans v. Dillahunty*, 711 F.2d 828 (8th Cir.1983). Here, however, plaintiff has failed to demonstrate that Curry has violated clearly established law and has failed to demonstrate that there are genuine issues of material fact to support his allegations that Curry deprived him of his right to due process. Furthermore, plaintiff has not produced any support for his conclusory allegations that Curry was part of a conspiracy to terminate him and deprive him of his civil rights because of his race. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (burden on nonmoving party to make a showing sufficient to establish the existence of an element essential to that party's case).

In sum, the Court finds that Curry's motion for summary judgment should be granted and plaintiff's claims against Curry will be dismissed.

*Defendant Montgomery*

■ According to Montgomery's uncontroverted affidavit, Montgomery had no role in the Civil Service proceeding. Montgomery became involved in this matter when plaintiff appealed the Civil Service Commission's decision to circuit court. At that time, Montgomery served as legal counsel to the Commission in connection with the appeal. Montgomery also served as legal counsel for the Commission in connection with plaintiff's EEOC complaint.

The claims against Montgomery must be dismissed. There is absolutely no proof to suggest that Montgomery violated any clearly established law. *Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199, 204–205 (8th Cir.1986). Further, plaintiff has failed to allege or produce any facts in support of his conclusory allegations of conspiracy. Plaintiff has failed to satisfy his burden, as the nonmoving party, to survive a motion for summary judgment. *Lewellen v. Raff*, 843 F.2d 1103, 1116 (8th Cir.1988).

*Defendant Dillinger*

■ Defendant Dillinger is an investigator for the Arkansas State Police. During the investigation to determine whether plaintiff had paid prostitutes for sex, the Sheriff's office asked Dillinger to give two of the women polygraph examinations to determine whether they were telling the truth when they stated that they had sex for money with officers of the Sheriff's department. In his reports to Chief Deputy Jim Beach, Dillinger reported that the statements of Yvonne Phillips and Renee Richie that they had been paid by plaintiff for sex were truthful.

Dillinger was present at the civil service hearing but was not called as a witness by either plaintiff or the sheriff. At the hearing, Phillips and Richie testified under oath that plaintiff had paid them for sex. In

addition, the polygraph examinations were introduced as evidence without objection of plaintiff.

At the circuit court review of the Civil Service Commission's decision, plaintiff did not introduce any additional evidence that Dillinger falsified the polygraph examinations.

The gravamen of plaintiff's complaint against Dillinger is that Dillinger falsified the polygraphs in an effort to conspire with the other defendants in the termination of plaintiff. It is clear that Dillinger is entitled to qualified immunity for the actions he took. The Court notes that the actions of taking the polygraph examination were lawful. Nevertheless, as in *Wright, supra,* the Court must determine whether the record and inferences, viewed in the plaintiff's favor, would create a genuine issue as to an impermissible purpose for the otherwise lawful activity.

Here, plaintiff's assertions of conspiratorial purpose are conclusory and unsupported and do not defeat Dillinger's qualified immunity defense. *Myers v. Morris,* 810 F.2d 1437, 1453 (8th Cir.1987). Plaintiff can point to no facts supporting his allegation of a conspiracy. Plaintiff has not produced any facts to support his assertion that Dillinger falsified the results of the polygraph examinations. That plaintiff disagrees with the results is not sufficient to meet his burden of proving a genuine issue of material fact. In sum, the court finds "inadequate record support to create a genuine issue of concerted activity directed at a common goal to achieve an unlawful purpose. Therefore, the pleading deficiencies and lack of evidence of substance sufficient to create a submissible issue of fact require the dismissal of" plaintiff's conspiracy claim against Dillinger. *Myers,* 810 F.2d at 1454. *See also Lewellen, supra.* Furthermore, the acts that plaintiff alleges Dillinger has done just do not rise to the level of a constitutional violation. *Wright,* 800 F.2d at 204. In sum, the claims against Dillinger must be dismissed.

## CONCLUSION

Accordingly, the Court finds that the motions for summary judgment of defendants Givens, Curry, Montgomery and Dillinger should be granted for the reasons set forth above. The claims against Givens and Curry in LR–C–86–337 and LR–C–86–600 are dismissed; the claims against Montgomery and Dillinger in LR–C–86–600 are dismissed.

IT IS SO ORDERED.