**Mary E. CURTIN, Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Charles E. Thacker, P.F. Clouse, D.G. Smith, S.C. Race, and Kermit Kirchoff, Appellees.**

No. 88–5034.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 19, 1988.

Decided Jan. 24, 1989.

John C. Deal, Columbus, Ohio, for appellant.

Burke M. Wong, U.S. Dept. of Justice, Washington, D.C., for appellees.

Before ARNOLD, FAGG and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Mary E. Curtin appeals the district court's[1] dismissal of her first amendment claims against the Federal Deposit Insurance Corporation (FDIC) for failure to state a claim. We affirm.

Curtin, an attorney in private practice, represents numerous banks in FDIC enforcement actions. Curtin disagrees with the FDIC's interpretation of 12 U.S.C. § 1818(b), which allows the FDIC to issue cease and desist orders to correct questionable banking practices. In reliance upon section 1818(b), the FDIC's Kansas City regional office has included clauses in cease and desist orders requiring banks to obtain management that the FDIC deems acceptable.

In September of 1986, Curtin spoke to a group of bankers in Des Moines, Iowa, and opined that the FDIC has no authority under section 1818(b) to include "management acceptable" clauses in cease and desist orders. Curtin stated that banks could accordingly refuse to accept such clauses.

Charles E. Thacker, regional director for bank supervision in the Kansas City, Missouri, regional office of the FDIC, also spoke at the Des Moines meeting and defended the FDIC's policy of including these clauses.

The views of Curtin and Thacker were reported in the October 6, 1986, issue of a local newspaper, *The Business Record.* After the article was published, Thacker called the editor of the newspaper and complained about the article. Thacker then sent a letter to the editor in which he referred to "distortions and inaccuracies" in the article. The letter was published in the newspaper's December 29, 1986, issue.

Thacker then wrote the following letter in December of 1986 to one of Curtin's clients, a bank in Iowa, addressing it to the bank's board of directors:

> This office was recently advised that Ms. Mary Curtin has been retained as legal counsel to represent your bank at the previously arranged meeting to discuss the issuance of a proposed Cease and Desist order, scheduled for January 7, 1987 in our Urbandale Field Office. We are familiar with Ms. Curtin's views toward bank regulatory matters, and more specifically, her views toward proposed Cease and Desist actions. This office feels that it would be nonproductive to attempt to negotiate a stipulation and consent to the issuance of the proposed Order under these circumstances. Accordingly, we are hereby cancelling the previously arranged meeting and intend to go forth with the preparation of a Notice of Charges and hearing to put this necessary enforcement action in place.

Thacker sent letters with similar wording to two of Curtin's other bank clients.

On February 12, 1987, Curtin telephoned the FDIC's Kansas City regional office to request that a previously arranged meeting with one of her Minnesota bank clients be rescheduled. Curtin was scheduled to appear before the FDIC at another location

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

that same day on behalf of another client. Following Curtin's call, Kermit Kirchoff, an FDIC bank examiner, called the Minnesota bank and refused to reschedule the meeting. Kirchoff also threatened the initiation of cease and desist proceedings against the bank if the bank did not meet with the FDIC according to the original schedule.

Curtin brought suit against the FDIC and five employees of the Kansas City Regional Office of the FDIC. She claimed that the FDIC wrote the three letters and refused to reschedule the meeting with the purpose or effect of injuring her law practice in retaliation for her exercise of her first amendment rights. The FDIC moved for dismissal based on lack of standing and failure to state a claim. The individual employees moved for dismissal based upon lack of personal jurisdiction, failure to state a claim under the first amendment, and immunity. The district court granted dismissal for failure to state a claim upon which relief could be granted.[2]

When considering a motion to dismiss for failure to state a claim, a court must liberally construe the complaint in favor of the plaintiff, accepting all material allegations of fact in the complaint as true. *May v. Commissioner of Internal Revenue*, 752 F.2d 1301, 1303 (8th Cir.1985). A court must also evaluate whether the allegations support a claim for relief under any possible theory, including any theory that the plaintiff failed to plead. *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422 (8th Cir.1986). A court may dismiss a complaint only if it is clear that the plaintiff would be unable to prove any set of facts in support of her claims that would entitle her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Dismissal of an action is warranted if the "allegations of constitutional violations are unsupported by sufficient facts to identify the nature of [the] alleged injury." *Yancey v. Alexander*, 724 F.2d 93, 94 (8th Cir.1983).

■ The government may not coerce a person into forgoing his first amendment rights by withholding a benefit or otherwise retaliating against him. *See Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972); *Harrison*, 780 F.2d at 1428. The allegations of fact in Curtin's complaint, however, whether considered separately or as a whole, do not establish that the FDIC engaged in retaliatory conduct. *See Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199, 204 (8th Cir.1986). Thacker, like any official of the FDIC, clearly had the right to express his views about FDIC policy and about Curtin's position at the Des Moines meeting and in *The Business Record*. His exercise of his first amendment rights cannot be interpreted as retaliatory conduct.

■ Moreover, nothing in the record indicates that the refusal of the FDIC to meet with three of Curtin's bank clients can be considered retaliatory action. The FDIC believed that prehearing meetings would not help the parties reach any compromises regarding the inclusion of management acceptable clauses and that the administrative-hearing process was the most efficient channel to settle the disputes. We decline to interfere with the FDIC's decisions regarding its allocation of staff resources. Likewise, the refusal of the FDIC to reschedule the meeting when Curtin had a conflicting meeting does not raise constitutional concerns. We agree with the district court that courts should not "serve as the arbitrator[s] of scheduling conflicts." *Curtin v. Federal Deposit Ins. Corp.*, No. 3–87–297, at 4 (D.Minn. Nov. 9, 1987).

■ The cases cited by Curtin are inapposite, because in each case the government clearly acted to injure the plaintiff after the plaintiff exercised a constitutional right. *See Drake v. Scott*, 812 F.2d 395 (8th Cir.1987) (caseworker fired); *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422 (8th Cir.1986) (condemnation claim filed); *Murphy v. Missouri Dep't of Correction*, 769 F.2d 502 (8th Cir.1985) (inmate transferred from minimum to maxi-

2. *Curtin v. Federal Deposit Ins. Corp.*, No. 3–87– 297 (D.Minn. Nov. 9, 1987).

mum security prison). Curtin's clients, not Curtin, were affected by the FDIC's refusal to negotiate at the prehearing meetings and by its refusal to reschedule a meeting. Curtin's allegation that the FDIC acted with the expectation that her law practice would suffer is entirely conjectural and is too tenuous to support this action. Curtin has not even alleged that any of her clients have dismissed her or that she has been unable to acquire new clients.

The order of dismissal is affirmed.