**Mitchell MOORE, Plaintiff,**

v.

**Denis DOWD, et al., Defendants.**

**No. 89–0121C(6).**

United States District Court,
E.D. Missouri, E.D.

Feb. 28, 1990.

Joel Kunin, St. Louis, Mo., for plaintiff.

Timothy Leahy, Sp. Asst. Atty. Gen., Bryan, Cave McPheeters & McRoberts, St. Louis, Mo., for defendants.

## MEMORANDUM

GUNN, District Judge.

This matter is before the Court on defendants' motion for summary judgment.

Plaintiff Mitchell Moore, a prisoner at Farmington Correctional Center (FCC), brings this action pursuant to 42 U.S.C. § 1983 against Denis Dowd, Superintendent of FCC, Daniel Henry, Assistant Superintendent of FCC, and Larry Wells, a correctional officer, alleging violations of his rights under the eighth and fourteenth amendments to the Constitution.

On the basis of the pleadings, memoranda, affidavits and exhibits on file in this matter, the Court finds the following undisputed facts.

Plaintiff, who at the time was housed in Housing Unit 2 or "2 House," requested placement in the FCC Protective Custody Unit and after a classification hearing on September 13, 1988 received an assignment to protective custody within the Administrative Segregation Unit pending the availability of space within the Protective Custody Unit. *See* Defendants' Exh. A. Plaintiff's assignment to Protective Custody within the Administrative Segregation Unit resulted in his placement in Housing Unit 5 or "5 House." On September 22, 1988, when a bed became available in the Protective Custody Unit in Housing Unit 4, plaintiff was placed there. On that same day defendant Henry allegedly told plaintiff that he did not need protective custody and would be ordered back to Administrative Segregation in Housing Unit 5. On September 23, 1988 a classification hearing was held and Moore was assigned to Administrative Segregation on the basis of the classification committee's finding that his "behavior [was] to [sic] aggressive for P.C. placement. . . ." Defendants' Exh. C.

On October 2, 1988 Moore wrote a letter to Denis Dowd protesting his placement in Administrative Segregation and requesting placement in the Protective Custody Unit. *See* Defendants' Exh. D; Plaintiff's Exh. 1. In the letter Moore explained that he had requested protective custody on September 12, 1988 because he had received threats from three inmates in Housing Unit 2, the area where he had been housed prior to September 12, 1988. *Id.* Plaintiff identified the inmates who had threatened him. *Id.* Finally, plaintiff protested his placement in "5–house for no reason at all" and again requested protective custody. *Id.*

Plaintiff asserts that on October 4, 1988 defendant Dowd told plaintiff that he would not place him in the Protective Custody Unit but that plaintiff could stay in protective custody within the Administrative Segregation Unit as long as he wished or return to the "SAU program" in Housing Unit 2. Plaintiff alleges that he had "known enemies" in the Administrative Segregation Unit and that on the basis of plaintiff's letter, defendants knew or should have known that plaintiff was in danger due to the presence of certain individuals in the Administrative Segregation Unit.

On October 12, 1988 two inmates attacked plaintiff, who was returning from the shower to his cell on Housing Unit 5. Plaintiff's Exh. 2. Plaintiff fought back in self-defense and as a result received a conduct violation. *Id.* The inmates who attacked plaintiff were not among those identified in his October 2, 1988 letter. *Id.*

In support of his procedural due process claim, plaintiff asserts that he was denied due process when he was transferred from the Protective Custody Unit to Administrative Segregation on September 22 or 23, 1988. In support of his eighth amendment claim plaintiff further alleges that defendants were deliberately indifferent to his right to be free from violent attack by fellow inmates because they denied his requests for protective custody.

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *First Security Savings v. Kansas Bankers Surety Co.*, 849 F.2d 345, 349 (8th Cir. 1988); *Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). In passing on a motion for summary judgment, a court is

required to view the facts and inferences that reasonably may be derived therefrom in the light most favorable to the non-moving party. *Holloway v. Lockhart*, 813 F.2d 874, 876 (8th Cir.1987); *Economy Housing Co. v. Continental Forest Products, Inc.*, 757 F.2d 200, 203 (8th Cir.1985). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. *Foster v. Johns–Manville Sales Corp.*, 787 F.2d 390, 392 (8th Cir.1986). As the Supreme Court has stated:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ With respect to plaintiff's procedural due process claim, the Court concludes that defendants are entitled to judgment as a matter of law because there is no basis on which a reasonable jury could find that plaintiff was denied procedural due process when he was transferred from Protective Custody to Administrative Segregation on September 22 or 23, 1988.

A prisoner has no due process-based liberty interest in freedom from administrative segregation. *Hewitt v. Helms*, 459 U.S. 460, 466–68, 103 S.Ct. 864, 868–70, 74 L.Ed.2d 675 (1983). Therefore, if plaintiff has a liberty interest in freedom from administrative segregation it must arise from state-imposed limitations on the exercise of official discretion concerning the decision to place plaintiff in protective custody or administrative segregation. *Clark v. Brewer*, 776 F.2d 226, 230 (8th Cir.1985). Plaintiff has not identified a state statute or prison regulation which would give rise to a liberty interest in protective custody or in being free from administrative transfer. Nevertheless, even if the Court assumes that such an interest exists, it is clear that plaintiff received all the process he was due with respect to his transfer from protective custody to administrative segregation.

Administrative transfers, unlike those for disciplinary reasons, entitle a prisoner to minimal due process protections. *Tyler v. Black*, 811 F.2d 424, 428 (8th Cir.), *reh'g granted*, 825 F.2d 1219 (1987). For the purposes of administrative transfers, due process is satisfied by an informal, nonadversarial review of the decision within a reasonable time. *Hewitt v. Helms*, 459 U.S. at 476, 103 S.Ct. at 873–74. Plaintiff was afforded such process by the September 23, 1988 classification committee hearing. *See Hayes v. Lockhart*, 754 F.2d 281, 283 (8th Cir.1985) (hearing held fifteen days after the transfer was held within a reasonable time). Although it is unclear whether prison officials must give reasons for administrative transfers, the transfer in this case was justified by plaintiff's violent, aggressive behavior, which made placement in the Protective Custody Unit inappropriate. *Cf. Rudd v. Sargent*, 866 F.2d 260, 261 (8th Cir.1989) (imposition of disciplinary sanctions by prison officials will be upheld if supported by *any* evidence).

■ The Court also concludes that defendants are entitled to summary judgment with respect to plaintiff's eighth amendment claim because they are entitled to qualified immunity with respect to that claim.

In some instances, prison officials and corrections officers enjoy qualified immunity against § 1983 claims for money damages. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). The determination of whether defendants are entitled to qualified immunity is a legal one to be made in the first instance by the Court. *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017–18, 82 L.Ed.2d 139 (1984) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In order to demonstrate that they are entitled to qualified immunity defendants must show that their actions were "objectively reasonable" and did not "violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738. *See also Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Although plaintiff alleges that defendants acted recklessly and with deliberate indifference to his need for protection, there is no evidence on the record before the Court to support these allegations. Viewing the facts in the light most favorable to the plaintiff, the Court finds no genuine issue of material fact concerning the propriety of defendants' motives or actions. *See Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199, 203 (8th Cir.1986). In order to defeat a claim of qualified immunity, plaintiff must offer more than a "mere recitation of an improper state of mind such as malice, bad faith, retaliatory motive or conspiracy." *Myers v. Morris*, 810 F.2d 1437, 1453 (8th Cir.), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). In this case plaintiff offers no more than unsubstantiated allegations of reckless conduct.

The Court concludes that defendants' responses to plaintiff's requests for protective custody were objectively reasonable. Defendants promptly moved plaintiff from Housing Unit 2 when he reported threats from inmates in that area. Thereafter, defendants found that plaintiff's violent behavior made him unsuitable for the Protective Custody Unit. Balancing their need to maintain order in the prison and to protect other inmates from harm against plaintiff's need for protection, the prison officials determined to place plaintiff in protective custody within the Administrative Segregation Unit. Plaintiff protested this decision, but did not indicate in his October 2, 1988 letter that he anticipated attacks from inmates in "5–house." Although he asserts that defendants "knew or should have known" that he had enemies within "5–house," the Administrative Segregation Unit, he offers no evidence from which the Court or a jury could conclude that defendants knew plaintiff was in danger.

Moreover, defendants did not ignore plaintiff's October 2, 1988 letter, but responded to it by explaining that plaintiff could remain in protective custody in the Administrative Segregation Unit as long as he wished. Although plaintiff suffered an attack while in the Administrative Segregation Unit, he was not attacked by any of the persons he named in his letter. Thus, prison officials had no way of anticipating this attack unless the level of violence in the Administrative Segregation Unit amounted to a "pervasive risk of harm." *See, e.g., Martin v. White*, 742 F.2d 469 (8th Cir.1984). Plaintiff has offered no evidence that such a level of violence prevailed. Absent such a showing, the Court cannot conclude that defendants' actions in response to plaintiff's requests for protective custody were other than objectively reasonable. Accordingly, defendants' motion for summary judgment on the issue of qualified immunity will be granted.